## IN THE UNITED STATES COURT FO APPEALS
## FOR THE EIGHTH CIRCIUT

**DAVID STEBBINS**                                        **Appellant**

**VS**                          **CASE NO. 13-2548**

**LEGAL AID OF ARKANSAS**                          **DEFENDANTS**

### APPELLANT BRIEFING

Comes now, *pro se* Appellant David Stebbins, who hereby submits the following Brief in

Support of his Appeal of the District Court's order denying Motion to Disqualify Judge and

Vacate Judgment.

### TABLE OF CONTENTS

| Item | | Page |
|------|---|------|
| 1. TABLE OF CONTENTS | | 1 |
| 2. TABLE OF AUTHORITIES | | 2 |
| 3. JURISDICTIONAL STATEMENT | | 3 |
| a) Basis for District Court's Jurisdiction. | 3 | |
| b) Basis for Court of Appeals' Jurisdiction. | 3 | |
| c) Timeliness of appeal | 3 | |
| d) Finality of judgment | 3 | |
| 4. STATEMENT OF ISSUES | | 3 |
| 5. STATEMENT OF THE CASE | | 4 |
| 6. SUMMARY OF ARGUMENT | | 6 |
| 7. ARGUMENT | | 7 |
| a) Solid evidence of vindictiveness is not required. Mere "reasonable likelihood" is sufficient. | 7 | |

b)  Both the Magistrate Judge and the main judge wish
to deprive Appellant of court access. It is therefore
reasonably likely that this was factored into their                    8
decision in the District Court.

c)  Since this appeal was filed, there have been many
more examples of conduct from the District Court                       9
that demonstrate a clear double-standard against
Appellant.

d)  Judge Holmes' affirmance of Magistrate Judge
activity without comment shows that Holmes shares                       16
the Magistrate Judge's bias.

8.  STANDARD OF REVIEW                                                  17

9.  CONCLUSION                                                          18

# TABLE OF AUTHORITIES

The following legal authorities will be used in this Briefing:

| **Statutes and Rules** | **Page** |
|---|---|
| 28 USC § 1291 | 3 |
| 42 USC §§ 12101-12213 | 3 |
| Ark. R. Civ. P. 60 | 3 |
| Code of Conduct for United States Judges, Canon 2 | 7 |
| **Case Law** | **Page** |
| Bell v. Wolfish, 441 US 520 (1979) | 5 |
| Lopez v. Vanderwater, 620 F. 2d 1229 (7th Cir. 1980) | 13 |
| United States v. Goodwin, 457 US 368, 373 (1982) | 7 |

## JURISDICTIONAL STATEMENT

For the reasons set forth below, this Court has jurisdiction over this appeal.

### Basis for District Court's Jurisdiction.

The District Court had jurisdiction over the underlying dispute, pursuant to the Americans with Disabilities Act. See 42 USC §§ 12101-12213.

The District Court had jurisdiction to grant the Motion for Relief of Judgment and to Disqualify Judge pursuant to Ark. R. Civ. P. 60.

### Basis for Court of Appeals' Jurisdiction.

This Court has jurisdiction to hear this appeal. See 28 USC § 1291.

### Timeliness of appeal

This appeal was filed less than thirty days after the order set forth below was entered.

### Finality of judgment

This appeal is being brought of an order which refused to overturn the finality of the judgment. It is, therefore, a final order.

## STATEMENT OF ISSUES

1. Is there a reasonable likelihood that Judges Holmes and Marchewski are vindictive against Appellant for his litigation history?

## STATEMENT OF THE CASE

1.     Appellant has an extensive history of *pro se* litigation in the U.S. District Court for the Western District of Arkansas.  However, Appellant maintains that none of the lawsuits were ever brought in bad faith, but out of genuine belief that he was wronged by those defendants.

2.     Magistrate Judge James R. Marchewski entered a recommendation suggesting that, because Appellant has filed a lot of *pro se* lawsuits, they are necessarily vexatious and abusive, and recommended restrictions on Appellant's future access to the Courts, which District Court Judge P.K. Holmes adopted.

3.     With this recommendation, and adoption, comes the reasonable likelihood that the Magistrate and District Court judges incorporated their personal frustrations with Appellant's litigation practices into their decisions in the District Court.

4.     Appellant filed a Motion to Reopen this Case and to Disqualify those Judges, but this motion was denied with little to no comment.

5.     Since that denial, the Magistrate Judge has issued orders stating the following:

   (a)     Despite the Defendants in that case not making reasonable attempts to resolve the discovery dispute without Court action, he would nonetheless proceed with disposing of the issue on the merits.

   (b)     The mere fact that Appellant has filed an ADA lawsuit has placed his *entire* medical condition at issue.  Appellant gets no medical privacy, for no other reason than, he has filed an ADA lawsuit.

   (c)     Appellant's discovery requests are without merit, and there is no need for the Defendants to contact anyone in order to obtain the information requested.

6.     Additionally, the Magistrate Judge issued a Report & Recommendation for Appellant's

Motions for Partial Summary Judgment in Case No. 12-3022 in their Court, where he…

(a)     Tried facts which were in genuine dispute, and

(b)     Held that Boone County had a penological interest over Appellant, in violation of the precedent of Bell v. Wolfish, 441 US 520 (1979).

7.     Furthermore, the Magistrate Judge only issued these rulings after an entire year, and only upon the Appellant filing a Petition for Writ of Mandamus to move the case forward.  This is a consistent problem with the Magistrate Judge. Perhaps Appellant filed the Mandamus petition at exactly the same time the Magistrate Judge had completed his investigation … except that this has happened three times in the past two years alone.

8.     Appellant filed a second motion to disqualify the magistrate judge, but this motion was denied, this time with even less comment than the previous denial.

# SUMMARY OF ARGUMENT

1.     All Appellant needs in order to secure recusal relief is a "reasonable likelihood" that the District Court and Magistrate Judges were vindictive against him.

2.     It is reasonably likely that the District Court and Magistrate Judges considered Appellant's litigation history in deciding this case.

3.     The District Court and Magistrate Judges have routinely taken long periods of time to rule on Appellant's motions, always waiting until Appellant files a petition for writ of mandamus in order to force the cases forward.  There is a clear pattern of this conduct.

4.     The District Court and Magistrate Judges have held Appellant to blatant double standards in Case No. 12-3022 in the District Court, including but not limited to the following:

    (a)     Ignoring a law when applying it works in Appellant's disfavor, but embracing it when he can find a way to side with the Defendants otherwise.

    (b)     Denying Appellant's motions to compel discovery on reasons that the information requested is overly broad, but granting the Defendant's motion, despite it having even greater over breadth.

    (c)     Attempting to decide the facts for himself, just so as to prevent the case from being submitted to a jury, where Appellant would stand the greatest chance of victory.

5.     Double standards constitute an automatic abuse of discretion.

# ARGUMENT

For the reasons set forth below, the District Court's order denying Appellant's Motion to Reopen Case should be reversed.

## APPLICABLE LAW AND STANDARDS

1.    First of all, let's nip one thing in the bud right here: Appellant does not have to necessarily "prove" vindictiveness on the part of the Magistrate Judge, the same way he has to "prove," in a discrimination case, that the defendant's conduct was motivated by a discriminatory or retaliatory animus.  Instead, the mere *likelihood* of vindictiveness is enough to obtain relief. See United States v. Goodwin, 457 US 368, 373 (1982):

> "Motives are complex and difficult to prove. As a result, in certain cases in which action detrimental to the [litigant] has been taken after the exercise of a legal right, the Court has found it necessary to 'presume' an improper vindictive motive. Given the severity of such a presumption, however — which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct — the Court has done so only in cases in which a reasonable likelihood of vindictiveness exists."

2.    On top of that, keep in mind that a judge is supposed to not only avoid impropriety, but also the mere *appearance* of impropriety, at all times, even in his personal life.  See Code of Conduct for United States Judges, Canon 2. This means that, even if the Magistrate Judge could provide a legitimate explanation for his conduct, the mere fact that an explanation is needed means that no explanation could ever possibly suffice.

3.    For these reasons, as long as the Magistrate Judge's actions even so much as yield the possibility of vindictiveness, it is not necessary for Appellant to "prove" that he is, indeed, vindictive; the mere likelihood is enough.

4.    With that out of the way, we move on to establishing the likelihood of whether or not the District Judges have exercised vindictiveness against Appellant:

**BOTH THE MAGISTRATE JUDGE AND THE MAIN JUDGE
WISH TO DEPRIVE APPELLANT OF COURT ACCESS. IT IS
THEREFORE REASONABLY LIKELY THAT THIS WAS FACTORED
INTO THEIR DECISION IN THE DISTRICT COURT.**

5.      The District Court and Magistrate Judges have confessed to frustration on Appellant's

litigation history.

6.      Whether or not this frustration was justified is not a part of this appeal.  That dispute is

currently being resolved in Case No. 13-2689.

7.      However, justified or otherwise, it is a possibility we cannot ignore that this frustration

had an impact, even if it was a subconscious impact, on the District Court's handling of the

merits of this case.

8.      By itself, Appellant concedes that this argument is rather weak. However, there are many

more examples to come that demonstrate the District Judges simply have it out for Appellant.

**SINCE THIS APPEAL WAS FILED, THERE HAVE BEEN MANY MORE
EXAMPLES OF CONDUCT FROM THE DISTRICT COURT THAT
DEMONSTRATE A CLEAR DOUBLE-STANDARD AGAINST APPELLANT.**

9.      The following examples demonstrate that the District and Magistrate Judges are

demonstrating a bias against Appellant out of their frustration from his litigation practices.

**Example #1:  The pattern of procrastination**

10.      The Magistrate Judge always takes *forever* to rule on even the simplest of motions, even

something as simple as an *in forma pauperis* application.

11.      Then there were the motions to compel discovery and the motions for partial summary

judgment.  These motions sat on the docket for AN ENTIRE YEAR before the Magistrate Judge

issued an opinion on them.  He only did so when Appellant filed a Petition for Writ of

Mandamus to force the case forward.

12.      Now, you could make the argument that he completed his year-long investigation of those

motions at *exactly* the same time Appellant *just happened* to run out of patience and file a
Petition for Writ of Mandamus.  However, this would only be believable if this happened only
once or twice.  Throughout multiple cases, this has actually happened *four times*! Four times, in
the past two years.

13.     The incidents, and the case numbers in the 8th Circuit where the Petitions for Writs of
Mandamus were filed, are set forth in the following table:

| # | Incident of procrastination | Mandamus 8th Cir. Case No. |
|---|---|---|
| 3 | The Motions for Partial Summary Judgment and to Compel Discovery in this case. | Case No. 13-2677 |
| 2 | Getting a ruling on the *in forma pauperis* application in this case | Case No. 12-1796 |
| 1 | Getting a ruling on the *in forma pauperis* application in the case of Stebbins v. Legal Aid of Arkansas | Case No. 11-2950 |
| 4 | Getting a ruling on the *in forma pauperis* application in the case of Stebbins v. Watkins | Case No. 13-2943 |

14.     This shows that it is not mere coincidence that Appellant's Petition was filed at exactly
the same time that the investigation was finished; this shows that there is a clear *pattern* to
Marchewski's procrastination.

15.     Then, there are dozens of incidents where the Magistrate Judge took literally months to
rule on motions, just that the Appellant never sought mandamus relief.  For example, in
Appellant's cases against Harp & Associates, as well as Legal Aid of Arkansas, the Magistrate
Judge waited until the entire discovery period was over with before he ruled on any motions to
compel discovery, meaning that, if discovery were compelled, Appellant would have no
opportunity to make follow-up discovery based on the information he received.

16.     Therefore, with all of these incidents and more, it is clear that the Magistrate Judge has
demonstrated a pattern of dragging his rulings out for as long as possible, simply to prejudice
Appellant.

## Example #2: ADA lawsuit = no medical privacy

17.     You know, for someone who tries to justify his procrastination by pointing out how "complex" the issues are which Appellant presents to him, he certainly does not seem to mind stripping the issue of medical privacy down to its barest of bones.

18.     According to him, Appellant should be forced to provide 100% of his medical records, simply because he has filed an ADA lawsuit.  In their Answer to Appellant's Objection to that order, the Defendants pointed out a variety of issues, but none of these issues were considered by the Magistrate Judge.  His logic was as simple as logic could possibly get:  ADA lawsuit = no medical privacy, whatso f***ing ever. Appellant's objection to this order was made because of the Magistrate Judge's crude logic that the mere filing of an ADA lawsuit automatically caused you to lose your right to medical privacy in all respects.  As was stated in the Objection:

> "If the Magistrate Judge's reasoning were allowed to prevail, this would effectively create a dilemma for all future persons who feel they have had their rights under the Americans with Disabilities Act violated. If they filed a lawsuit pursuant to it, then win loose or draw, they would automatically forfeit their right to medical privacy altogether, not just to the extent that it is relevant to their ADA discrimination claim. They would subsequently become discouraged from filing their suit due to the consequences thereof. Even if they are ultimately victorious, this victory would come at a terrible price, since the person's deepest, most embarrassing medical secrets (the things that he only told to his doctor because he was statutorily guaranteed secrecy) would then be on public record for everyone in the whole wide world to see!"

19.     So, this just begs the question of … why did the Magistrate Judge think that this completely ludicrous logic was legally sound?  How does he even *arguably* justify his decision to force Appellant to disclose ALL his medical records?  Sure, the Defendant has provided some additional arguments, but they did not provide them in the Motion to Compel when the Magistrate Judge was considering it; that means that the only way he could claim that he was acting on those arguments was if he had unlawful *ex parte* communications with the Defense

Counsel, which would give grounds for *automatic* disqualification.

### Example #3:  Jury function usurpation

20.     In his Report & Recommendation on the Motions for Partial Summary Judgment, the Magistrate Judge issued the following findings of fact:

(a)     The Jail Guards' failure to allow Appellant to bond when he had the chance was unintentional.

(b)     Forced labor is therapeutic to the person who is forced to do it against his will.

21.     However, none of these facts were even remotely close to being "not genuinely disputed." Even if there were *some* evidence to support the finding (which there wasn't), the evidence was far from "indisputable," especially in the case of the finding that the jail guards' failure to allow Appellant to bond was unintentional, as the only evidence supporting such a finding was the Defendants' word.

22.     When ruling on a motion for summary judgment – and, by proxy, when issuing a report & recommendation on them – the function of the court is not to try the facts; it is to determine if there exists a fact that needs to be tried.  Only at a trial can a fact be tried; that is why it is called a "trial."

23.     Despite this basic, fundamental concept that every lawyer – let alone every judge – is presumed to know[1], the Magistrate Judge nevertheless proceeded to make his own determination as to the credibility and weight of the evidence.

24.     Now, given the fact that he obviously knows the true function of summary judgment, and cannot make the argument that he genuinely believed in the propriety of his actions, ask yourself: Why would he attempt to usurp the function of the jury, despite this clear impropriety? What does he possibly stand to gain, except that Appellant would be unable to present his case to a

---

[1]     Merely passing the bar exam proves that you understand the difference between summary judgment and trial.

jury, meaning that the County would stand the greatest chance of having to pay up for their crimes? What other explanation can exist? This explanation can be a one in a million chance; as long as it makes sense, that explanation could satisfy Appellant.

### Example #4:  The "penological interest" double standard

25.    The only thing more blatant and obvious than the Magistrate Judge's attempt to usurp the function of the jury was his finding that Boone County's policy requiring inmates to "respect" officers served a "legitimate penological interest," despite the fact that Appellant was never convicted of any crime.

26.    Ignoring for a minute the fact that Appellant was able to find the Supreme Court case of *Bell v. Wolfish*, flatly saying that a person cannot be punished except upon conviction (something you would think the Magistrate Judge would have come by at some point when he was researching the law for that matter … *and spent an entire year doing so*!), we are still left with the simple fact that, in the Magistrate Judge's view, Appellant was guilty of his crime. He saw no evidence other than the mere fact that Appellant had been charged, but that was enough for the Magistrate Judge to consider Appellant to be a criminal.

27.    Now, what does that mean?  Well, it means one of three things:

(a)    He has no regard for Appellant's due process rights.  The mere accusation is enough to convict Appellant in his view.  No trial. No chance to cross-examine witness. No chance to make an argument in his own defense.  Accusation = conviction, and that's all there is to it. Or …

(b)    He does not see any need to stick only to federal law.  Appellant was charged with a *state* crime, meaning that, even if the Magistrate Judge were to pull a "William Vanderwater" on us[2], he still would need to be a *state judge* in order for that to come even remotely close to

---

[2]    What Appellant means by that is... he is referencing the case of Lopez v. Vanderwater, 620 F. 2d 1229 (7ᵗʰ Cir.

being legitimate.  Or …

 (c) He considers anything that Boone County does to be gold.  No Boone County Sheriff Deputy, in his eyes, is capable of arresting an innocent man.

28. Any one of those things would warrant his disqualification.

29. However, keep in mind that this example has the phrase "double standard" in the title! Appellant has NOT forgotten about that part, in case you were wondering.

30. The double standard lies in the fact that the Magistrate Judge is not consistent, even with his own logic.  He used the "penological interest" justification when to not use it would force him to apply strict scrutiny to the censorship rule, which would mean that Appellant would be entitled to victory since the jail guards would simply be required to have "tough skin." However, in the THIRD Motion for Partial Summary Judgment (the one regarding the forced labor and Appellant's 13th Amendment rights), he *embraced* the fact that Appellant was not convicted, when he felt that he could still rule in the County's favor despite this (indeed, if the County were allowed to advance a penological interest, then the 13th Amendment on its face would not protect Appellant, as the plain text of that amendment makes an exception for "punishment for a crime where the criminal has been duly convicted").

31. Mind you, his logic relied upon him usurping the authority of the jury as described above, but that doesn't detract from the fact that he nevertheless inconsistently applied his own logic. The only thing consistent was that Appellant must lose, which clearly shows that the Magistrate Judge simply has a bias against Appellant.

### Example #5:  The discovery double standard

32. Another double standard the Magistrate Judge clearly exercised was his approach to

1980), where Judge William Vanderwater personally arrested Flor Lopez. At the police station, Vanderwater had arraigned Lopez, waived the right to trial by jury, convicted him instantly, and sentenced him to 240 days in prison, all without counsel or even trial.  Therefore, to "pull a William Vanderwater" means to judge someone guilty just on suspicion or accusation alone.

resolving the discovery disputes in Case No. 12-3022.

33.     He relieves the Defendants of having to provide discovery, simply because they claim it to be "burdensome" to them (despite giving no actual *facts* to substantiate that claim), but he does not seem to care about the burden – the *lifelong* burden – that Appellant would experience by having to provide ALL of his medical records, regardless of relevance to this case (details as to the impropriety of that order was discussed in Example #3, but that section only discussed how the order was improper on its own; this section shows the clear double standard when the Magistrate Judge inconsistently applies his own logic.

### Example #6: The Subpoenaing delays

34.     In Case No. 12-3022, the Magistrate Judge consistently refuses to allow Appellant to subpoena witnesses.  For example, he first states that Appellant should wait for a scheduling order to be issued before subpoenas can issue.  However, when he changes his mind and decides that a scheduling order *won't* be issued, he decides that Appellant cannot depose witnesses until ONE MONTH BEFORE TRIAL.

35.     A trial date on that case has not even been set in this case yet!

36.     The longer these witnesses go without being summoned, the greater their chances are of forgetting important details about the testimony Appellant wants them to give!

37.     One of the biggest examples of this problem is Rocky Barrows, a man who heard Jones harassing Appellant over the intercom, but was trying to sleep at the time, meaning that he was likely not paying very close attention to what he observed, severely increasing the likelihood that he will forget something that could end up being important.

38.     The Magistrate Judge's consistent refusal to issue subpoenas clearly shows his agenda to make sure that Appellant's case is as weak as possible, in the event that it DOES go to trial.

## DISTRICT JUDGE'S SHARED BIAS

39.    The District Judge P.K. Holmes denied Appellant's Second Motion to Disqualify Judge

on the grounds that, essentially, Appellant "disagreed" with the Magistrate Judge.

40.    This is clearly untrue.  Appellant's arguments for disqualification were far beyond simply

disagreeing with the Magistrate Judge on the merits of the case.  They included …

(a)    Challenges to the Magistrate Judge's subject-matter jurisdiction.

(b)    Double standards that the Magistrate Judge employed (e.g. Appellant merely asks for

the Magistrate Judge to be consistent in his logic).

41.    In order for the District Judge to find that Appellant merely "disagrees" with the

Magistrate Judge, he must completely ignore the arguments made by Appellant as described

above, and he is all too happy to do so.

42.    This evidences that the District Judge shares the Magistrate Judge's personal frustration

with Appellant, and it needs to stop.

### Wrap-up

43.    To wrap up this argument, let us recap the points.

(a)    The judges have confessed (not merely acted in accordance with, but flatly confessed)

to holding a grudge against Appellant for his litigation practices.  Their potential

incorporation of this frustration into other decisions that were supposed to be on the merits is

a possibility that cannot be ignored.

(b)    The judges have engaged in procrastination, only ceasing the procrastination when

petitions for writs of mandamus were filed, with such consistency as to demonstrate a

pattern.  How many times times in a row does a person have to be within 100 yards of a bank

robbery before police start fingering him as a suspect? If this happened once in a blue moon, you could argue that it's coincidence; this, however, is a pattern.

(c)     The judges have demonstrated a willingness to completely usurp the position of jury to the detriment of Appellant.

(d)     The judges have held Appellant to numerous double standards, such as adopting one argument of law that Appellant proposed when they were able to rule against Appellant on that issue anyway, but then inconsistently rejecting that same concept earlier in that same document when accepting it would require they rule in Appellant's favor.

(e)     Arguing that medical privacy is completely waived if you file an ADA lawsuit. It is clear that they don't consider the "medical condition at issue" to be the main factor; it is clear that they consider "crazy David Stebbins has filed another lawsuit" to be the main motivating factor.

44.     All of these double standards and unfair treatment demonstrate that they simply just dislike Appellant, and that it has nothing to do with the merits of the cases at hand.

## STANDARD OF REVIEW

1.      The District Court's ruling that disqualification is not warranted is reviewable *de novo*. It doesn't seem like that, but bear in mind one thing: Although the District Court's finding that the conditions for disqualification were not present is, indeed, a finding of fact, keep in mind that the District Court's very honesty in finding those facts is precisely what is being called into question!

2.      Because the judges themselves are, essentially, the defendants/respondents in this action, this Court should take any findings of fact or exercises of discretion from the District Judges with a grain of salt accordingly.  Therefore, this Court should resolve this matter as if it were a trial court.

## CONCLUSION

Remember, Appellant does not hot have to prove, by preponderance of the evidence, that the District Judges were biased against him.  This isn't a suit for damages; Appellant seeks only to have the judges removed.  For this reason, the precedent states that only a ***reasonable likelihood*** of bias is required.  If Plaintiff's lawsuits and motions are truly meritless and should be denied, then the truth will prevail; a change in judges will do no harm to the interests of justice.

Wherefore, premises considered, Appellant respectfully requests that the District Court's order denying the Motion to Reopen the Case and Disqualify Judges be reversed.

So requested on this 16th day of September, 2013.

 /s/ David Stebbins 
David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com